# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS LUCIANO,<br><br>            Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>            Defendant. | Case No. 22-cv-734-MMA (RBB)<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>[Doc. No. 2] |

On March 7, 20221, Plaintiff Travis Luciano filed a Complaint against the California Department of Corrections and Rehabilitation ("Defendant" or "CDCR") in the San Diego County Superior Court. *See* St. Ct. Case No. 37-2022-00008426. On April 4, 2022, Plaintiff filed a First Amended Complaint. *See* Doc. No. 1-2 at 3–10[1] ("FAC"). Plaintiff asserts one cause of action for sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 20000e-2(a). *See id.* On May 23, 2022,

---

[1] Citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

Defendant removed the action to this Court on the basis of federal question jurisdiction, 28 U.S.C. § 1441. *See* Doc. No. 1. Defendant now moves to dismiss the FAC. *See* Doc. No. 2. Plaintiff filed an opposition, to which Defendant replied. *See* Doc. Nos. 7, 8.[2] For the following reasons, the Court **GRANTS** Defendant's motion.

## I. Background[3]

The CDCR provides medical, dental, and mental health services to its prison inmates through the California Correctional Health Care Services ("CCHCS"). FAC ¶ 9. In May 2013, Plaintiff began working for the CCHCS as an Office Technician at the Richard J. Donovan Correctional Facility. *Id.* ¶ 10. From September 29, 2014 through January 26, 2015, Plaintiff participated in and completed training to become an Associate Governmental Program Analyst ("AGPA") Healthcare Budget Analyst. *Id.* ¶ 13. Health Program Manager, Vicki Alanis, supervised and instructed the course. *Id.*

Plaintiff applied and interviewed for the AGPA position in February 2015. *Id.* ¶ 14. However, the day after Plaintiff completed the class, Ms. Alanis informed him that he was not selected for the AGPA position, and that the position would not be filled because they did not find a suitable candidate. *Id.* ¶ 15.

On October 19, 2015, Plaintiff emailed the CDCR's Hiring Department, inquiring as to why he was not selected for the position. *Id.* ¶ 16. The Hiring Department informed Plaintiff that it had screened Plaintiff out because of an interview he gave fourteen months prior. *Id.*

On January 11, 2016, Plaintiff was promoted to Office Services Supervisor. *Id.* ¶ 17.

---

[2] Although Plaintiff initially missed the deadline to oppose, the Court granted him leave to file an opposition. *See* Doc. Nos. 5, 6.

[3] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the Complaint. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

On January 2, 2018, Plaintiff applied for the AGPA OOC position in Community Resources, and the CDCR placed him in Personnel. *Id.* ¶ 18. According to Plaintiff, by January 5, 2018, the CDCR informed Plaintiff that the position in Community Resources did not exist, and he was reverted back to his Office Services Supervisor role. *Id.*

Since October 2015, Plaintiff interviewed for over twenty SSA/AGPA positions, none of which he received. *Id* ¶ 19. When Plaintiff requested feedback, the CDCR commended his performance and seldom provided him with areas to improve. *Id.*

In particular, in late March 2018, the CDCR posted four AGPA positions, and Plaintiff applied to all four. *Id.* ¶ 20. The interviews took place around May 7, 2018 through May 14, 2018. *Id.* Despite Plaintiff's five-year tenure, positive performance evaluations, two interim terms at the AGPA level, meeting all of the positions' requirements, and having been invited to every SSA/AGPA interview over the previous three years, Plaintiff was not interviewed for any of these four positions. *Id.* ¶ 21. Instead, the CDCR interviewed three candidates—all three of whom are female. *Id.* ¶ 22. Plaintiff is male. *Id.* ¶ 5.

Plaintiff alleges that one qualification for the positions was 3 years of analytical experience. *Id.* ¶ 24. Plaintiff contends that at least two of the three female candidates did not have three years of analytical experience. *Id.*

On May 11, 2018, Plaintiff filed a grievance, alleging that the CDCR utilizes discriminatory hiring and promoting criteria. *Id.* ¶ 26. On June 7, 2018, RJD's Warden responded, stating that the criteria were confidential, but assuring Plaintiff that the criteria ensured a fair selection process. *Id.* ¶ 27. On October 26, 2018, the CDCR's Civil Rights Operations Office of Internal Affairs found that there was insufficient information to support Plaintiff equal employment opportunity claim. *Id.* ¶ 28.

On November 25, 2019, Plaintiff applied and was interviewed for an SSA/AGPA position. *Id.* ¶ 29. Plaintiff was not selected for the position. *Id.* Plaintiff was told that a more qualified individual received the position. *Id.* However, Plaintiff asserts that this rationale is pretextual and that instead he was not selected because of his sex. *Id.* ¶ 30.

According to Plaintiff, during the last four years of his employment, only two male employees were promoted—one of which was Plaintiff. *Id.* ¶ 31.

On December 20, 2019, Plaintiff separated from CCHCS and transferred to work for CalTrans. *Id.* ¶ 33.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure[4] 12(b)(1) allows for dismissal of a complaint for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction must exist when the action is commenced. *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). Further, subject matter jurisdiction may be raised "at any stage of the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

When considering a motion to dismiss under Rule 12(b)(1), a court is not restricted to the face of the pleadings, but may review any evidence to resolve factual issues relevant to the jurisdictional determination. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Consideration of material outside the pleadings does not convert the motion into one for summary judgment. *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983). Once challenged, the burden of establishing the existence of subject matter jurisdiction rests on the party asserting jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942).

A Rule 12(b)(6) motion tests the legal sufficiency of the claims made in a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to

---

[4] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

### III. REQUEST FOR JUDICIAL NOTICE

Defendant has filed a request for judicial notice in connection with its motion. *See* Doc. No. 2-2. Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003). However, a court may consider certain materials, including matters of judicial notice, without converting the motion to dismiss into a motion for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or

(2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). Further, "a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (internal quotation marks omitted)).

Defendant asks the Court to judicially notice Plaintiff's Equal Employment Opportunity Commission ("EEOC") records. Plaintiff does not oppose Defendant's request.

Plaintiff references his EEOC exhaustion efforts in the FAC, *see* FAC ¶ 8, and therefore has incorporated those records by reference. Moreover, EEOC records are public records whose existence and authenticity are not subject to reasonable dispute. *See e.g.*, *Cardenas v. Costco Wholesale Corp.*, No. 19-cv-00818-PJH, 2019 U.S. Dist. LEXIS 108802, at *3 n.1 (N.D. Cal. June 28, 2019) (taking judicial notice of EEOC records on motion to dismiss); *Dornell v. City of San Mateo*, 19 F. Supp. 3d 900, 904 n.3 (N.D. Cal. 2013) (same). Accordingly, the Court **GRANTS** Defendant's request and judicially notices the EEOC records attached to Defendant's request as Exhibit 1.

## IV. DISCUSSION

Defendant moves to dismiss the FAC under Rules 12(b)(1) and 12(b)(6), arguing that Plaintiff's Title VII claim is subject to dismissal because many of the alleged incidents of discrimination are either time barred or unexhausted, and that Plaintiff fails to make a prima facie showing of sex discrimination.

Title VII of the Civil Rights Act of 1964 prohibits a covered "employer" from discharging or discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie

case of sex discrimination under Title VII, a plaintiff must show that: "(1) [he] belongs to a protected class; (2) [he] was qualified for the position; (3) [he] was subjected to an adverse employment action; and (4) similarly situated [women] were treated more favorably, or [his] position was filled by a [woman]." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). The Ninth Circuit, however, has instructed that post-*Twombly* and *Iqbal*, a plaintiff in an employment discrimination case "is *not required* to plead a prima facie case of discrimination in order to survive a motion to dismiss." *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1050 n.2 (9th Cir. 2012) (emphasis in original) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508–11 (2002)). Instead, courts are to use "judicial experience and common sense," *Fresquez v. Cty. of Stanislaus*, No. 1:13-cv 1897-AWI-SAB, 2014 U.S. Dist. LEXIS 66466, at *30 (E.D. Cal. May 13, 2014), to determine whether a complaint contains sufficient factual information to raise a plausible inference of discrimination, *see Abikar v. Bristol Bay Native Corp.*, 300 F. Supp. 3d 1092, 1106 (S.D. Cal. 2018).

### A.  Initial Matter

An initial matter must be mentioned at the outset. Scattered throughout the FAC are allegations that the CDCR failed to promote Plaintiff in retaliation. *See, e.g.*, FAC ¶¶ 1, 11, 30, 32, 36. And Plaintiff contends in opposition to the present motion that he brings a Title VII claim for retaliation in addition to sex discrimination. *See* Doc. No. 7-1 at 7. He does not. Plaintiff's only cause of action is for "Sex Discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)." FAC at 8. Section 2000e-2(a) prohibits discrimination based upon a protected class status, including sex. Retaliation is an entirely distinct cause of action under Title VII; 42 U.S.C. § 2000e-3 protects employees from discriminatory action because the employee undertook a protected activity in challenging an unlawful employment practice.

Accordingly, Plaintiff's retaliation allegations and the parties' related arguments are not relevant to the FAC and pending motion and therefore the Court only assesses the viability of Plaintiff's sex discrimination claim.

### B. Timeliness of Discriminatory Acts

Title VII requires that a party exhaust their claims with the EEOC prior to bringing suit. A person seeking relief under Title VII must first file a charge with the EEOC within 180 days of the alleged unlawful employment practice, or, if the person initially instituted proceedings with the state or local administrative agency, within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). However, contrary to Defendant's arguments, timely exhaustion is not a jurisdictional prerequisite to suit but instead is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Surrell v. Cal. Water Serv.*, 518 F.3d 1097, 1104 (9th Cir. 2008) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). To be sure, the Supreme Court has stated that "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1851 (2019); *see also id.* at 1852 ("In sum, a rule may be mandatory without being jurisdictional, and Title VII's charge-filing requirement fits that bill."); *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1302 (N.D. Cal. 2020) ("The Supreme Court recently clarified that Title VII's claim-processing rules, while mandatory, are non-jurisdictional.") (citing *Fort Bend Cty.*, 139 S. Ct. at1850 ("Title VII's charge-filing requirement is not of jurisdictional cast.")). Nonetheless the Court analyzes Defendant's timeliness argument within the context of Rule 12(b)(6).

Defendant argues that all but one of Plaintiff's alleged discriminatory acts are time barred. *See* Doc. No. 2-1 at 9. Plaintiff asserts that the CDCR discriminated against him: (1) in February 2015 with respect to the AGPA Healthcare Budget Analyst position, *see* FAC ¶ 15; (2) in January 2016 with respect to the AGPA OOC Community Resources position, *see id.* ¶18; (3) "over twenty times" since October 2015, *see id.* ¶ 19; (3) in March through May 2018 with respect to the four AGPA positions, *see id.* ¶ 20; and (5) in November 2019 with respect to an SSA/AGPA position, *see id.* ¶ 29.

Plaintiff filed dual complaints with the California Department of Fair Employment and Housing ("DEFH") and the EEOC on March 20, 2020 (collectively, the "EEOC Complaint"). *See* Doc. No. 7-1 at 10; *see also* Def. Ex. 1. Both parties seem to agree that the 300-day limitations period noted above applies. *See* Doc. No. 2-1 at 9; *see generally* Doc. No. 7-1; *see also EEOC v. PC Iron, Inc.*, 316 F. Supp. 3d 1221, 1226 (S.D. Cal. 2018) ("Courts have found that because California's DFEH has a work-share agreement with the EEOC, the 300 day period applies to claims in California."). As such, pursuant to 42 U.S.C. § 2000e-5(e)(1), only those actions that occurred within the 300 days prior to the EEOC Complaint are timely and may be brought as discriminatory acts in this case, absent equitable tolling or estoppel.

Three hundred days before March 20, 2020 was May 25, 2019. Consequently, the only discriminatory act that is facially timely is the November 2019 allegation that Plaintiff was not selected for an unidentified SSA/AGPA position. *See AMTRAK v. Morgan*, 536 U.S. 101, 113(2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."). Plaintiff appears to concede this point; he does not argue that he is entitled to equitable tolling or estoppel as to the other acts, nor does he argue that these acts are timely. *See* Doc. No. 7-1 at 12. Accordingly, the Court **GRANTS** Defendant's motion on this basis.

Nonetheless, Plaintiff may still bring these allegations as evidence to the extent they are relevant to and support a viable claim. *See AMTRAK*, 536 U.S. at 113 ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim."); *see also Raad v. Fairbanks N. Star Borough*, 323 F.3d 1185, 1192 (9th Cir. 2003).

Because the Court finds, and Plaintiff concedes, that the January 2015–May 2018 incidents are untimely, the Court declines to reach Defendant's alternative argument that these incidents are unexhausted. *See* Doc. No. 2-1 at 10–12.

### B. Constructive Discharge

Defendant next argues that Plaintiff's constructive discharge claim is unexhausted. *See* Doc. No. 2-1 at 12. The Court agrees.

Defendant is correct that the FAC appears to contain a constructive discharge claim. *See* FAC ¶ 10 ("Mr. Luciano worked for CCHCS as an Office Technician and Office Services Supervisor II until December 20, 2019, at which time his employment was unceremoniously severed."); *id.* ¶ 32 ("Having been subjected to Defendant's sex discrimination and retaliation and unsuccessfully challenging Defendant's unlawful conduct, Plaintiff had no other option but to sever his employment."). Plaintiff seems to contend in opposition that he does *not* bring a constructive discharge claim, notwithstanding the language in the FAC. *See* Doc. No. 7-1 at 7. In any event, any constructive discharge allegation is not reasonably related to the EEOC Complaint and as such, the claim is not exhausted.

The Ninth Circuit has explained that district courts lack jurisdiction over any claims not specifically brought before the EEOC unless they are "'like or reasonably relate[d] to' the charges presented to the EEOC, or if the claims fall 'within the scope of an EEOC investigation that reasonably could [have been] expected to grow out of the allegations' made before the EEOC." *Anderson v. Am. Airlines, Inc.*, 252 F. App'x 166, 167–68 (9th Cir. 2007) (quoting *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003)).

According to the EEOC Complaint, Plaintiff alleged that he experienced retaliation on November 25, 2019 be he "[r]eported or resisted" discrimination, and as a result was "[d]enied hire or promotion. Def. Ex. 1 at 19. Plaintiff's EEOC Complaint charges, in full:

> I believe I was denied a promotional position in retaliation for filing a discrimination complaint based on my sex (male). In or around May 2018, I filed a complaint with internal affairs against Mary Ann Glynn CEO, Vicki Alanis, HPM II, and Wehtahnah Tucker, Chief Support Executive for denied hire based on sex (male). On November 25, 2019, I interviewed again for the

> Staff Service Associate (SSA)/Associate Governmental Program Analyst (AGPA) position with Dr. Steven Roberts, Chief Medical Executive Vicki Alanis, HPM III, and Marice Zaratan, CHSA-I. However, a few weeks later, I was informed that I was not selected for the position. As such, I believe my denied promotion for the position of SSA/AGPA demonstrates retaliatory discrimination.

Def. Ex. 1.

Courts are to construe EEOC charges "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Brown v. Dep't of Pub. Safety*, 446 F. App'x 70, 73 (9th Cir. 2011) (quoting *Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir. 2002) (internal quotation marks omitted)). "In determining whether the exhaustion requirement has been satisfied, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 62, 636 (9th Cir. 2002) (internal quotation marks omitted).

Even liberally construing the EEOC Complaint, the Court finds that any constructive discharge claim is not like or reasonably related to his charge. According to the FAC, Plaintiff's employment was "severed" on December 20, 2019—exactly three months before he filed his EEOC Complaint. *See* FAC ¶ 3. Yet, Plaintiff's EEOC Complaint contains no mention of his leaving the CCHCSA or any reason why he left. It is true that an EEOC investigation would have uncovered his separation. However, the Ninth Circuit has held that a constructive discharge claim is not reasonably related to a failure to promote claim where a plaintiff does not allege a pattern of discrimination and could have but did not raise the issue to the EEOC. *See Ong v. Cleland*, 642 F.2d 316, 320 (9th Cir. 1981). Plaintiff simply did not allege any pattern of discrimination in his EEOC Complaint such that a constructive discharge claim could reasonably be expected

to grow from the allegations.  Instead, he asserts one lone claim for retaliation stemming from a sex discrimination grievance he filed in 2018.[5]  *See* FAC ¶ 26.

     A "constructive discharge is a claim distinct from the underlying discriminatory act."  *Green v. Brennan*, 136 S. Ct. 1769, 1779 (2016).  And the Ninth Circuit has explicitly stated that "a constructive discharge claim is not like or reasonably related to a charge of discrimination in promotion."  *Albano v. Schering-Plough Corp.*, 912 F.2d 384, 386 (9th Cir. 1990) (citing *Ong v. Cleland*, 642 F.2d 316, 320 (9th Cir. 1981)).  Several courts in this Circuit have followed suit and concluded that a constructive discharge claim is separate from any underlying discrimination such that, absent more, a claim for the former is not reasonably related to a charge solely alleging the latter.  *See, e.g.*, *Villa v. Arizona*, No. CV-17-03557-PHX-JAT, 2019 U.S. Dist. LEXIS 69940, at *28 (D. Ariz. Apr. 25, 2019); *EEOC v. Cal. Psychiatric Transitions, Inc.*, 644 F. Supp. 2d 1249, 1269

---

[5] Given the single charge of retaliation in the EEOC Complaint, the Court has serious concerns over whether Plaintiff duly exhausted his sex discrimination claim.  The prior "discrimination complaint" referenced in the EEOC Complaint is Plaintiff's May 11, 2018 Merit Issue Grievance, in which Plaintiff complained of a discriminatory hiring and promoting process.  *See* FAC ¶ 26.  While this action may certainly fall within Title VII's protection from retaliation, claims of retaliation for filing a complaint against, or otherwise opposing, sex discrimination do not require a meritorious sex discrimination claim.  As such, an investigation of an EEOC complaint alleging retaliation for filing a previous grievance would not have encompassed whether the grievance had merit—*i.e.*, whether Plaintiff had experienced sex discrimination in 2018.
     Moreover, Plaintiff could have alleged in the EEOC Complaint—or put forth facts suggesting—that the CDCR retaliated against him for filing a grievance *and* discriminated against him on the basis of his sex—*i.e.*, that alleged sex discrimination he previously complained of occurred again in 2019.  He did not.  Ultimately, it is Plaintiff's burden to establish that his November 2019 sex discrimination claim is like or reasonably related to his charge of retaliation; Plaintiff must show that "[t]he [EEOC] charge . . . describe[ed] the facts and legal theory with sufficient clarity to notify the agency that employment discrimination is claimed."  *Ong v. Cleland*, 642 F.2d 316, 319 (9th Cir. 1981) (quoting *Cooper v. Bell*, 628 F.2d 1208, 1211 (9th Cir. 1980) (internal quotation marks omitted)).
     While the Court has the authority to sua sponte consider its subject matter jurisdiction over Plaintiff's sex discrimination claim, *see* Fed. R. Civ. P. 12(h)(3); *see also Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002), the Court declines to do so at this time.  Defendant does not argue in its motion that the Court lacks jurisdiction over the entire claim—just individual incidents.  *See* Doc. No. 2-1.  And Plaintiff seems to believe he has stated a claim for retaliation.  *See* Doc. No. 7-1.  Accordingly, in light of the apparent confusion over the issues and number of claims in this case, the matter will be better addressed with further briefing.

(E.D. Cal. 2009) (citing *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 (7th Cir. 2004) (finding that Plaintiff could not sustain his Title VII constructive discharge claim because it was not "like or reasonably related" to the original EEOC charge, which described only racial discrimination and harassment)).

Similar to the situation in *Villa*, "the allegations in Plaintiff's EEOC charge in no way express that Plaintiff believed his working conditions were so difficult that he felt compelled to resign." 2019 U.S. Dist. LEXIS 69940, at *28. Plaintiff's EEOC Complaint charges one claim for retaliation in November 2019 stemming from a sex discrimination grievance filed in 2018. He presented the EEOC with no facts or information even suggesting that he was experiencing ongoing sex discrimination so severe that the reasonable person in his position would have felt forced to quit. *See Wallace v. City of San Diego*, 479 F.3d 616, 626 (9th Cir. 2007). And that Plaintiff separated from CCHCS prior to filing his EEOC Complaint and yet made no mention of it only strengthens the conclusion that he has not exhausted any constructive discharge claim. *See Decampo v. OS Rest. Servs., Ltd. Liab. Co.*, No. 14-00092 ACK-BMK, 2014 U.S. Dist. LEXIS 59141, at *14 (D. Haw. Apr. 29, 2014); *Cal. Psychiatric Transitions, Inc.*, 644 F. Supp. 2d at 1262; *see also Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997) ("[W]here a retaliatory act occurs prior to the filing of a charge and the employee fails to allege the retaliatory act of a retaliation claim in the subsequent charge, the retaliatory act ordinarily will not reasonably relate to the charge.").

Consequently, because Plaintiff did not complain of a pattern of discrimination and made no reference to his separation in the EEOC Complaint, Plaintiff has not exhausted any constructive discharge claim and thus, the Court lacks the jurisdiction over this allegation. Accordingly, the Court **GRANTS** Defendant's motion on this basis as well.

**C.   Sex Discrimination Claim**

Finally, Defendant argues that Plaintiff has not stated a viable sex discrimination claim under Title VII. *See* Doc. No. 2-1 at 14. As noted above, a plaintiff need not plead a prima facie case of sex discrimination to survive a motion to dismiss. However, he

must still plausibly state his claim. Ultimately, "[i]n order to prevail on a Title VII disparate treatment sex discrimination claim, an employee need only establish that, but for his or her sex, he or she would have been treated differently." *Jespersen v. Harrah's Operating Co., Inc.*, 392 F.3d 1076, 1079 (9th Cir. 2004).

Based upon the discussion above, Plaintiff's only pleaded and timely claim is for sex discrimination when the CDCR failed to promote him in November 2019. *See* FAC ¶ 29. Sex is a protected class under Title VII. *See RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1055-56 (9th Cir. 2002). According to the Complaint, Plaintiff applied for an unidentified SSA/AGPA position on November 25, 2019. *See id.* He had previously been commended for his performance, *see id.* ¶ 19, and had only received positive performance evaluations over his five-year tenure, *see id.* ¶ 21. Further, the Court can plausibly infer that he was qualified for the promotion. Specifically, Plaintiff alleges he had already served two interim terms at the AGPA level and had previously been invited to apply to many postings at the SSA/AGPA level. *See id.* ¶ 21. Plaintiff did not receive the promotion, *see id.* ¶ 29, which is an adverse employment action within the Title VII context. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (identifying "hiring, firing, failing to promote, reassignment with significantly differently responsibilities, or a decision causing a significant change in benefits" as examples of adverse employment actions). Plaintiff was informed that "another candidate was more qualified." FAC ¶ 29. However, Plaintiff asserts that this rationale was pretextual. He contends that he was not promoted because of his sex (male). *See id.* ¶ 30. According to Plaintiff, only two males were promoted during his final four years with the CCHCS. One was Plaintiff, when he was promoted to Office Services Supervisor in January 2016. *See id.* ¶ 17. The second was an outside departmental hire. *See id.* ¶ 31.

These allegations just narrowly fail to nudge Plaintiff's claim across the line from conceivable to plausible. *See Iqbal*, 129 S. Ct. at 1952. Missing from Plaintiff's FAC is a key factual allegation needed to support the reasonable inference that he was denied the promotion on account of his sex—that a female received the position instead. Although

Plaintiff plausibly pleads background information that may support an inference of sex discrimination within the CDCR, generally, he must plead that he was discriminated against *due to* his sex when the CDCR failed to promote him in November 2019, specifically. Absent the allegation that a woman received the position and thus, was treated more favorably, Plaintiff fails to plausibly state a Title VII sex discrimination claim. Accordingly, the Court **GRANTS** Defendant's motion on this basis.

## V. Conclusion

Based upon the foregoing, the Court **GRANTS** Defendant's motion as discussed above and **DISMISSES** Plaintiff's sex discrimination claim with leave to amend. Should Plaintiff choose to file a second amended complaint, he must do so on or before **September 30, 2022**. Defendant must then respond within the time prescribed by Rule 15.

**IT IS SO ORDERED**.

Dated: September 9, 2022

HON. MICHAEL M. ANELLO
United States District Judge